# Funk *versus* Smith.

1. Land was sold by the sheriff there being no special terms of sale; the purchaser failed to comply; it was again sold for a less sum; the Statute of Limitations began to run from the failure to comply and not from the second sale.

2. The legal inference of a promise to pay was from the bid, the failure to pay was the breach, from which the cause of action arose, and the difference between the sales was evidence as to the measure of damages.

3. This was not the result of an alternative contract to pay damages in lieu of the bid, but an election of the sheriff to put up the property again and to sue for damages.

4. The postponement to the second sale is the act of the sheriff or the party who directs him, for which the bidder is not responsible.

5. Campbell *v.* Boggs, 12 Wright 524, approved and applied.

May 17th 1870. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.

Error to the Court of Common Pleas of *Blair county:* No. 84, to May Term 1869.

This was an action of assumpsit by James Funk, late sheriff of Blair county, against George W. Smith to recover the difference

between the amount bid by the defendant at a sheriff's sale for property which he refused to accept, and the sum for which the same property was subsequently sold. The defendant pleaded the Statute of Limitations. The property was first sold to Seth R. McCune, the agent of the defendant, on the 24th of January 1860, for $800. It was afterwards sold on the 20th of July 1861 by the same sheriff on another execution for $580. This suit was brought June 6th 1866. These facts having been given in evidence, it was agreed that they should be considered as if found by a special verdict.

The court entered judgment for the defendant; this was the only error assigned by the plaintiff who removed the case to the Supreme Court.

*T. Banks* and *S. S. Blair*, for plaintiffs in error, cited Holdship *v.* Doran, 2 Penna. R. 15; Gaskell *v.* Morris, 7 W. & S. 32; Wright's Appeal, 1 Casey 373; Evans *v.* Lee, 11 Harris 88; Overton *v.* Tracey, 14 S. & R. 328; Leinhart *v.* Forringer, 1 Penna. R. 493; Hill *v.* Meyers, 10 Wright 16; Rice *v.* Hosmer, 12 Mass. R. 127.

*R. A. McMurtrie*, for defendant in error.—Gaskell *v.* Morris, *supra ;* Addison on Contr. 1205, 1206; Downey *v.* Garard, 12 Harris 54; Miller *v.* Wilson, Id. 121; Derrickson *v.* Cady, 7 Barr 32; Steele *v.* Steele, 1 Casey 154.

The opinion of the court was delivered, July 7th 1870, by

AGNEW, J.—The defendant, by his agent, Seth R. McCune, became the purchaser of certain premises at a sheriff's sale made on the 24th of January 1860, for $800; and failing to pay his bid, the premises were resold on the 20th of July 1861, to H. Crumbacker for $580. This suit was brought on the 6th day of June 1866, to recover the difference between the bids, and was decided against the plaintiff upon the plea of the Statute of Limitations. This is assigned as error. The force and effect of the plea of the statute will be seen by considering the contract on which the action is founded. The defendant merely bid the sum of $800 for the premises knocked off to him at the sheriff's sale. There were no special terms of sale to vary the legal inference drawn from the bid, to wit, a promise to pay the sum of $800 as the price of the property sold. The failure to pay this sum is evidently the breach of the contract from which a cause of action arose to the sheriff to enable him to recover the price bid or damages for its non-payment. The contract itself had but a single stem, and that grew directly up from the bid. There was no secondary promise branching off from this stem, to pay the difference in price between this bid and another bid afterward to be

[Funk *v*. Smith.]

made. That is but the law's mode of measuring the damages when the sheriff, not choosing to recover the bid itself, puts up the property for sale a second time. It is not the result of an alternative contract to pay damages in lieu of the bid, but of the election of the sheriff to put up the property again, and to sue for the damages resulting from non-payment of the bid. But as the failure to pay the bid is the only breach such a single promise is susceptible of, the right of action then arose, and cannot be postponed by the sheriff to any future period he may choose to designate. The statute begins to run at the time of the breach, and cannot be stopped except by mutual consent. The postponement of the second sale after the breach of the contract by non-payment, is solely the act of the officer or of the party who directs him, for which the original bidder is in no way responsible. Could it be done without the consent of the bidder, it would be in effect to start a new period for the running of the breach, or to treat the contract as having a double obligation. But, as remarked in Miller *v*. Wilson, 12 Harris 120, using the language of Chief Justice Best, "the thing has but one neck, and that is cut off by the defendant, and it would be mischievous to drive the plaintiff to a second, third or fourth action as the successive consequences of the wrong may arise. It is not true even as a general rule that courts will not anticipate a loss in future." Much harder would it be for the defendant if the successive consequences would suspend the running of the statute. It would not be a statute of repose, but a wakeful watch to keep the defendant ever in suspense. In the present case, if the property were put up a third, fourth or fifth time at long intervals, and a failure to pay the bid each time, it would be difficult to settle the time of the running of the statute; yet it is clear as a fact, the first bidder's breach of his contract is not shifted by all these subsequent occurrences. There are analogies illustrating the principle that the statute runs from the time of actual breach of the promise, when it is single in its form; unless in cases of pure trusts, or where the breach has been concealed by the defendant. Thus in Campbell *v*. Boggs, 12 Wright 524, in the case of the collection of money by an attorney in fact, it was held that the statute runs from the time of the failure to pay over the money, and not from the time of notice to the principal of its receipt, unless there have been a fraudulent concealment by the attorney. Woodward, J., remarked: "For on what is the action founded, but the breach of the implied contract? And when is the contract broken? Manifestly when the money is not paid over within a reasonable time after it is received. Then at that point the cause of action accrues, not years afterward, when the client, with a lack of diligence for which he alone is responsible, discovers that it is in the hands of his counsel. Actions on the case for consequential damages are

[Funk *v.* Smith.]

not to be brought till the damages are developed, but actions for breach of contract do not wait on the consequences, but attach at the breach. The measure of damages in these actions may be less affected by consequences resulting from the breach, but they do not give the right of action. That arises the instant the contract is broken." This language might well be written for the present case. See also Downey *v.* Garard, 12 Harris 52, in which a similar rule is adopted.

Judgment affirmed.